BWB:JHK
F.#2009R01793


IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ SEP 2 4 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

09-CR-663 (RJD)

NAJIBULLAH ZAZI,

Defendant

- - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTION FOR A PERMANENT ORDER OF DETENTION

BENTON J. CAMPBELL
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

JEFFREY H. KNOX
BERIT W. BERGER
DAVID BITKOWER
Assistant United States Attorneys
(Of Counsel)

I. PRELIMINARY STATEMENT

The government hereby moves for a permanent order of detention with respect to defendant Najibullah Zazi. On September 23, 2009, a grand jury in the Eastern District of New York returned an indictment charging Zazi with conspiracy to use weapons of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2). As discussed below, Zazi is both a danger to the community and a risk of flight for purposes of the Bail Reform Act. The evidence at trial will prove that the defendant conspired with others to detonate improvised explosive devices within the United States. In furtherance of the conspiracy, Zazi received detailed bomb-making instructions in Pakistan, purchased components of improvised explosive devices, and traveled to New York City on September 10, 2009 in furtherance of his criminal plans. If convicted, the defendant faces up to life imprisonment and a Guidelines sentence of life.

## II. Factual Background

Detailed below is a proffer of certain evidence that the government will establish at trial. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000)(government entitled to proceed by proffer in detention hearings); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)(same).[1]

### A. Trip to Pakistan

Customs and Border Protection ("CBP") records show that on August 28, 2008, Zazi and others flew from Newark Liberty International Airport to Peshawar, Pakistan via Geneva, Switzerland and Doha, Qatar. They traveled on Qatar Airlines Flight Number 84.

Zazi is associated with three email accounts ("Email Account 1," "Email Account 2" and "Email Account 3") that were active during his time in Pakistan. One of the accounts is directly subscribed to Zazi, and all three accounts contain slight variations of the same password. The government will

---

[1] See also United States v. Defede, 7 F. Supp. 2d 390, 393 (S.D.N.Y. 1998)("The Bail Reform Act requires a hearing prior to the entry of a detention order. It is considerably less explicit about the precise nature of the hearing, saying in relevant part only that the defendant 'shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise' and that the rules of evidence do not apply. Nevertheless, it now is clear in this Circuit that the government as well as the defendant 'may proceed by proffer,' which is implicit in the fact that the rules of evidence are inapplicable.")(citations omitted).

establish at trial that these accounts were used in furtherance of Zazi's efforts to manufacture explosive devices. Among other things, during a consent search of two of the three accounts, agents found jpeg images of nine pages of handwritten notes containing formulations and instructions regarding the manufacture and handling of different kinds of explosives. Based on email header information, these images had been emailed to Email Accounts 2 and 3 in early December 2008, while Zazi was in Pakistan. As discussed below, the same notes were transferred onto ZAZI's laptop computer in June 2009.

The notes contain specifications for, among other explosives, the explosive Triacetone Triperoxide ("TATP"), which is the explosive used in the 2005 London train bombings and intended to be used in the 2001 "shoe bomb" plot by Richard Reid. The three components of TATP are hydrogen peroxide, acetone and a strong acid (such as hydrochloric acid). The handwritten notes mention that acetone is found in nail polish remover and that hydrogen peroxide can be found in "Hair Salon - 20-30%." The notes discuss formulations for mixing hydrogen peroxide with flour, and list ghee oil as a type of fuel that can be used to help initiate the explosive device.

Zazi flew from Peshawar back to John F. Kennedy International Airport in Queens, New York ("JFK") on January 15, 2009 aboard Qatar Airlines Flight Number 83.

B. Research and Purchase of Explosive Device Components

Prior to traveling to Pakistan, Zazi lived in the Flushing neighborhood of Queens, New York. Within days of returning from Pakistan, Zazi moved to Aurora, Colorado. Zazi resided with family members on East Ontario Drive in Aurora from January 2009 until the end of July 2009. Zazi's father, Mohamed Wali Zazi ("Wali") moved from New York to Aurora in July 2009, and the two ultimately moved into a residence on East Smoky Hill Road in Aurora on or about July 31.

A lawfully-authorized search of Zazi's laptop computer reflects that Zazi transferred the bomb-making instruction notes onto his laptop and/or accessed the notes on his laptop in June and July 2009. The FBI's search of the laptop also reflects that Zazi conducted several internet searches for hydrochloric acid during the summer of 2009, and "bookmarked" a site on two different browsers for "Lab Safety for Hydrochloric Acid." Zazi also searched a beauty salon website for hydrocide and peroxide.

During July and August 2009, Zazi and others associated with Zazi purchased unusually large quantities of hydrogen peroxide and acetone products from beauty supply stores in the Denver metropolitan area. Surveillance videos and receipts reflect that on July 25, 2009, Zazi purchased six bottles of "Liquid Developer Clairoxide" from a beauty supply store in Aurora. This product contains high concentrations of hydrogen

peroxide. The videos and receipts also establish that on August 28, 2009, Zazi purchased 12 32-oz bottles of "Ms. K Liquid 40 Volume" - another hydrogen peroxide based product - from the same store. Records from a nearby hotel in Aurora reflect that Zazi checked into a suite in the hotel on the same day. The suite included a stove.

The evidence will further establish that individuals associated with Zazi purchased unusual quantities of hydrogen and acetone products in July, August and September 2009 from three different beauty supply stores in and around Aurora. One person purchased a one-gallon container of a product containing 20% hydrogen peroxide, as well as an eight ounce bottle of acetone. A second person purchased an acetone product in approximately the first week of September. A third person purchased 32-ounce bottles of Ion Sensitive Scalp Developer, a product containing high levels of hydrogen peroxide, on approximately three occasions during the summer of 2009.

C. Travel to New York

On September 6 and 7, 2009, Zazi rented the same suite at the same hotel in Aurora where he had stayed on August 28. The hotel surveillance camera captured Zazi checking-in to the hotel at 2:32 p.m. on September 6. Subsequent FBI testing for explosives and chemical residue in the suite revealed the presence of acetone residue in the vent above the stove.

Importantly, the bomb-making notes contemplate heating the components in order to make them highly concentrated.

Also on September 6 and 7, Zazi attempted to communicate on multiple occasions with another individual - each communication more urgent in tone than the last - seeking to correct mixtures of ingredients to make explosives. Included in the communications were requests related to flour and ghee oil, which are two ingredients listed in the bomb-making instructions. Zazi repeatedly emphasized in the communications that he needed the answers right away.

A lawfully-authorized search of Zazi's laptop computer reflects that the next day, September 8, Zazi searched the internet for locations of a home improvement store within zip code 11354, the zip code for the Flushing neighborhood of Queens, New York. He then searched the home improvement store's website for muriatic acid, which is a diluted version of hydrochloric acid and, as discussed, could constitute the third component of TATP, which is comprised of hydrogen peroxide, acetone and a strong acid like hydrochloric acid. Zazi viewed four different types of muriatic acid. He viewed one particular type - Klean Strip Green Safer Muriatic Acid - multiple times. This product claims to have lower fumes and is safer to handle than standard muriatic acid.

The same day as the home improvement store internet searches, Zazi rented a car. The next day, September 9, Zazi started driving from Colorado to New York City, taking with him the laptop computer (which, as noted, contained the bomb-making instructions). The car rental contract reflects that Zazi was supposed to return the car in New York on September 14, 2009.

Zazi arrived in New York on the afternoon of September 10 and traveled to Flushing, Queens. Lawfully-authorized intercepts of Zazi's cell phone reflect that Zazi became suspicious, and then learned directly, that law enforcement officers were tracking his activities. Zazi ultimately purchased an airline ticket and returned to Denver on September 12.

Zazi spent the night of September 10 at a residence in Queens. During the execution of a search warrant at the Queens residence, agents found, among several other items, an electronic weight scale in the closet. The scale and batteries both contained Zazi's fingerprints. In addition, during a lawfully-authorized search of Zazi's laptop, agents found the images of the handwritten bomb-making instructions discussed above. Experts in the FBI's explosives unit have opined that the scale would be suitable for performing several of the procedures outlined in the instructions. With specific respect to TATP, a scale such as the one recovered would be required to weigh the hydrogen peroxide and other precursor chemicals in determining

the proper concentrations and ratios. These procedures are outlined in the bomb-making notes.

After Zazi's laptop was searched in New York, and after Zazi returned to Colorado with his laptop, agents executed a search warrant at his Aurora residence. Agents recovered the same laptop that had previously been searched and found that the hard drive had since been removed.

III. Analysis

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's

guilt. See 18 U.S.C. § 3142(g). In addition, pursuant to 18 U.S.C. § 3142(e)(3)(C), there is a presumption of detention if there is probable cause to believe that the defendant has committed a federal crime of terrorism listed in "[18 U.S.C.] section 2332b(g)(5)" with a maximum sentence greater than ten years' imprisonment. Because the defendant has been indicted by a grand jury for violating 18 U.S.C. § 2332a(a), which is one of the statutes listed in 18 U.S.C. § 2332b(g)(5), and which carries a maximum sentence of life imprisonment, there is probable cause that he has committed such a federal crime of terrorism. Therefore, "[s]ubject to a rebuttable presumption, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." Id.

Even putting aside the statutory presumption of detention, all four detention factors weigh overwhelmingly in favor of detention. First, it is beyond dispute that conspiring to use weapons of mass destruction is an exceedingly serious and violent crime. The seriousness is reflected in the statute, which, as noted above, provides for a sentence of up to life in prison. 18 U.S.C. § 2332a(a). It is also reflected in the Sentencing Guidelines. See USSG §§ 2M6.1 and 3A1.4. Section 2M6.1 provides for a base offense level of 42, and Section 3A1.4 increases the criminal history category to VI and provides for a

12 level upward adjustment because the offense was intended to promote a federal crime of terrorism. The resulting offense level is 54, which produces a Guidelines range of life imprisonment.

Second, with respect to the history and characteristics of the defendant, the fact that Zazi is a resident alien with extensive ties to Afghanistan - including the fact that his wife and children apparently reside in Pakistan - significantly increases his risk of flight.

Third, Zazi poses a significant danger to the community if released. The evidence at trial will show that Zazi remained committed to detonating an explosive device up until the date of his arrest, as exemplified by, among other things, traveling overseas to receive bomb-making instructions, conducting extensive research on the internet regarding components of explosive devices, purchasing - on multiple occasions - the components necessary to produce TATP and other explosive devices, and traveling to New York City on September 10, 2009 in furtherance of the criminal plan.

Finally, with respect to the strength of the evidence factor, the proffered evidence speaks for itself. Eyewitness testimony, intercepted email and telephone communications and internet searches, direct evidence that Zazi actually purchased the component parts of improvised explosive devices, and

extensive forensic analysis all point to the inescapable conclusion that Zazi and others conspired to use an improvised explosive device and that Zazi took substantial steps toward carrying out the plan.

IV. Conclusion

For the reasons cited above, the government hereby moves for a permanent order of detention in this case.

Dated: Brooklyn, New York
September 24, 2009

Respectfully submitted,

BENTON J. CAMPBELL
United States Attorney
Eastern District of New York

By: [signature]
Jeffrey H. Knox
Berit W. Berger
David Bitkower
Assistant U.S. Attorneys
(718) 254-7581