UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                               **MEMORANDUM & ORDER**
                                                                09-CR-663 (RJD)

-against-

NAJIBULLAH ZAZI,
                        Defendant.
------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                10-CR-0019 (RJD)

-against-

ZAREIN AHMEDZAY,
                        Defendant.
------------------------------------------------------------------X

DEARIE, Chief Judge.

      Najibullah Zazi and Zarein Ahmedzay pleaded guilty, pursuant to plea agreements with the government, to conspiring to use weapons of mass destruction to blow up New York City subways in September 2009. At the defendants' plea hearings, the government, expressing concerns that public disclosure of the defendants' cooperation would impede its ongoing investigation and threaten the safety of the defendants and their family members, moved to file the agreements under seal. The Court granted the motions without prejudice to any application to unseal the agreements. In the ensuing weeks, the media has at times speculated or reported as fact that the defendants are cooperating with authorities. Citing "one person involved in this case," "senior law enforcement officials," and "law enforcement sources, speaking on condition of anonymity," certain media have reported in matter-of-fact fashion that the defendant Zazi is providing detailed information to authorities. One newspaper -- relying on an unnamed spokesperson for Zazi's lawyers -- purportedly confirmed that such negotiations were underway.

The media has moved to unseal the plea agreements and related documents. Because the Court concludes that the government has not met its high burden of establishing that continued sealing is necessary to prevent a substantial probability of prejudice to a compelling government interest, the applications to unseal the agreements are granted.

## BACKGROUND

A. <u>Najibullah Zazi</u>

On September 23, 2009, a grand jury returned an indictment charging Najibullah Zazi with conspiracy to use weapons of mass destruction, in violation of 18 U.S.C. § 2332(a)(2). On February 22, 2010, Zazi pleaded guilty, pursuant to a cooperation agreement with the government, to a superseding information charging him with conspiracy to use weapons of mass destruction, in violation of 18 U.S.C. § 2332(a)(2), conspiracy to commit murder in a foreign country, in violation of 18 U.S.C. § 956(a)(1), and providing material support to a foreign terrorist organization, al-Qaeda, in violation of 18 U.S.C. § 2339B.

By written motion, the government requested that the Court place the plea agreement, the government's motion, and the government's proposed sealing order under seal. Zazi's counsel joined in the government's request. The Court ordered the documents sealed without prejudice to any application to unseal all or a portion of the materials. The arrest of Zazi drew international attention. Various news organizations, including Newsday, the Associated Press, and Bloomberg News have since moved to unseal the documents.[1]

---

[1] The government responded to the media's application by filing two letters with the Court. One letter, which articulates the general legal standards governing the sealing of a plea agreement, was publicly filed. The second letter, which details the government's factual bases for sealing, was itself filed under seal. Shortly thereafter, the media requested that the government's sealed letter also be unsealed.

2

B.   Zarein Ahmedzay

On January 8, 2010, a grand jury returned an indictment against Zarein Ahmedzay charging him with making material false statements to the Federal Bureau of Investigation in connection with that agency's investigation into the Zazi matter. On February 25, 2010, three days after Zazi pleaded guilty, a grand jury returned a five-count superseding indictment against Ahmedzay charging him with, among other things, conspiring with Zazi and others to use weapons of mass destruction and to commit murder in a foreign country, and providing material support to a foreign terrorist organization. On April 23, 2010, Ahmedzay pleaded guilty to these charges pursuant to a plea agreement with the government.

As in the Zazi proceeding, the government moved to seal the plea agreement and related documents. Ahmedzay's counsel joined in the application. Chief Magistrate Judge Gold, to whom the Court had referred Ahmedzay's guilty plea, granted the government's motion to seal the documents without prejudice to any application to unseal. The New York Post and Newsday have moved to unseal all of the documents.[2]

## DISCUSSION

A.   Legal Standard

In deciding whether to unseal the documents, the Court is called upon to consider two clearly legitimate and competing concerns. The press and the public have a First Amendment "right of access to plea hearings and to plea agreements." United States v. Haller, 837 F.2d 84, 86-87 (2d Cir. 1988); see also United States v. Alcantara, 396 F.3d 189, 196 (2d Cir. 2005) (citing Washington Post v. Robinson, 935 F.2d 282, 288 (D.C. Cir. 1991) ("In accord with the rulings of our sister Second, Fourth, and Ninth Circuits, we now find that plea agreements have

---

[2] As in the Zazi proceeding, the government responded to the media's application to unseal Ahmedzay's agreement with a sealed letter that detailed its factual bases for requesting that the agreement remain under seal.

3

traditionally been open to the public, and public access to them enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system. Therefore, there is a first amendment right of access to them.")). On the other hand, the government correctly notes that this right of access is a qualified one that may be overcome where the Court makes "specific, on the record findings . . . demonstrating that closure [or sealing] is essential to provide higher values and is narrowly tailored to serve that interest." Alcantara, 396 F.3d at 199 (quoting Haller, 837 F.2d at 87, quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 13-14 (1986)).

The Second Circuit has attempted to reconcile these two competing interests by setting forth a four-prong test:

> First, the district court must determine, in specific findings made on the record, if there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent. Second, if a substantial probability of prejudice is found, the district court must consider whether reasonable alternatives to closure cannot adequately protect the compelling interest that would be prejudiced by public access. Third, if such alternatives are found wanting, the district court should determine whether, under the circumstances of the case, the prejudice to the compelling interest override[s] the qualified First Amendment right of access. Fourth, if the court finds that closure is warranted, it should devise a closure order that, while not necessarily the least restrictive means available to protect the endangered interest, is narrowly tailored to that purpose.

United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (internal citations, quotation marks and punctuation marks omitted). The party moving to seal a document (or to maintain it under seal) bears the burden of establishing that sealing is warranted. The more extensive the closure requested, "the greater must be the gravity of the required interest and the likelihood of risk to that interest" to justify sealing. Ayala v. Speckard, 131 F.3d 62, 70 (2d Cir. 1997).

While the relevant law is reasonably clear, application of the <u>Alcantara</u> principles in a given case or cases is oftentimes not so straightforward. And the exercise is particularly troublesome when, as so often is the case, a misjudgment may have very grave consequences. The Court is also mindful of the fact that the government does not seek permanent sealing of the materials, but instead protection until, in the prosecution's view, the danger has passed. Indeed, given the circumstances in these cases, it is virtually inevitable that the documents in questions will in relatively short order see the light of public scrutiny.

B.  <u>Analysis</u>

The issue before the Court is whether the government has met its burden of establishing that public disclosure of the defendants' cooperation would create a substantial probability of prejudice to one or more of the compelling interests of the government such that the public's and media's right of access must give way to protect these interests. The government contends that disclosure of the defendants' cooperation would lead to a substantial probability of prejudice to three compelling interests. First, the government argues that its ongoing criminal investigation would be prejudiced once the defendants' former co-conspirators and their supporters become aware of the defendants' cooperation because they would be encouraged to destroy evidence, tamper with witnesses, and to otherwise take steps to avoid detection and apprehension by law enforcement. Similarly, the government argues that its ongoing overseas intelligence collection would be prejudiced because al-Qaeda members located in foreign countries would be encouraged to relocate and change their operational practices. Lastly, the government argues that disclosure of the defendants' cooperation might prompt al-Qaeda to seek retribution against the defendants, thereby jeopardizing the safety of the defendants and their families.

The Court concludes that in the two instances before it, the government has not met its heavy burden. To be sure, the government advances interests that courts have recognized as

5

sufficiently compelling to justify sealing. And the Court takes very seriously the government's concerns that disclosure of the defendants' cooperation may negatively impact these interests. However, to find that disclosure of the defendants' cooperation would result in a substantial prejudice to these interests in the present circumstances would require the Court to ignore the realities before it.

The government is certainly correct that as a general rule unsealing is not mandated merely because the media has speculated that Zazi is cooperating, but the media's speculation here is hardly unsubstantiated guesswork. Instead, the media's speculation of Zazi's cooperation was triggered by a confluence of circumstances, including (i) Zazi's plea of guilty early in the case to a superseding information, rather than an indictment, a clear signal to any interested party or organization that some sort of relationship has been fostered; (ii) the swift indictment of Zazi's co-conspirators, including Ahmedzay, on charges identical to the charges that Zazi pleaded guilty to only a few days earlier; and (iii) the government's application to seal the plea agreement and related documents. Those circumstances, linked with a number of stories reporting that un-named sources within and without law enforcement have indicated that Zazi is cooperating, have turned speculation and assumption into purported fact in an environment of heated interest and seemingly insatiable and understandable curiosity.

In response, the government argues that there is an important distinction between media reports of Zazi's cooperation and official confirmation of that fact. Under different circumstances, the Court might readily agree. The media, armed with the usual roster of unidentified sources, cannot be given a trump card over law enforcement assertions of the need for confidentiality merely because the media chooses to report something as fact when it may or may not be. The Court does not challenge the government's assertion that media confirmation,

6

accurate or not, may in a given case seriously undermine the efforts of law enforcement to protect the community, build its case, harvest valuable intelligence, and at the same time significantly enhance a serious risk to others, culpable or not. However, at this stage in these proceedings, all reasonable inferences point to the obvious conclusion that Zazi is cooperating. And more importantly for the purposes of this motion, the Court does not see -- and the government does not convincingly explain -- how or why "confirmation" of Zazi's cooperation would lead his co-conspirators to so dramatically change their behavior so that a substantial prejudice to the government might result. Rather, the Court finds it more reasonable to conclude, absent more substantial justification by the government, that any remaining co-conspirators have employed, or are currently employing, all possible methods to avoid detection by law enforcement, and that public disclosure of Zazi's cooperation will be of little consequence to the government's efforts to find or build a case against them.

As for the media's application to unseal the agreement reached with Ahmedzay, while the government is correct that the media has not reported that Ahmedzay is cooperating to the same degree as it has about Zazi, the Court finds that disclosure is now appropriate. Given the intense media attention to this case, repeated and unfortunate comments by law enforcement officials detailing the nature and scope of the conspiracy, including the defendants' connections to high-ranking al-Qaeda members, and the fact that nine months have passed since the defendants' plot was foiled, the Court cannot accept the government's assertions that it would take disclosure of Ahmedzay's cooperation to prompt co-conspirators to increase their efforts to avoid government detection. Similarly, the Court is not convinced that an enhanced risk of substantial prejudice to Ahmedzay's or his family's safety would arise if his cooperation is formally disclosed.

The Court does not reach its decision lightly. At another time, under different circumstances, the government's arguments may have had enough punch to justify continued non-disclosure of the defendants' cooperation agreements. At the end of the day, however, the "right of access is the rule, and it is a rare and exceptional case where it does not apply," United States v. Cojab, 996 F.2d 1404, 1407 (2d Cir. 1993), and the Court's power to seal to preserve "higher values" is "one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons," Alcantara, 396 F.3d at 192 (citing Cojab, 996 F.2d at 1405). On this record, while the government's concerns are clearly not made from whole cloth, it has not met its burden of setting forth "persuasive evidence of serious risk" to a compelling interest. Ayala, 131 F.3d at 70.

## CONCLUSION

For the foregoing reasons, the media's applications are granted and the cooperation agreements and all related documents currently under seal are hereby ordered unsealed, effective 12 Noon, June 30, 2010. Pending that time, this Memorandum & Order will remain under seal and the Clerk will transmit copies to the United States Attorney's Office and counsel for defendants Zazi and Ahmedzay only. The docket sheet shall indicate that a sealed Memorandum & Order has been filed.

SO ORDERED.

Dated: Brooklyn, New York
      June 25, 2010                  s/ Judge Raymond J. Dearie

                                                  RAYMOND J. DEARIE
                                                  United States District Judge