1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------------x
     UNITED STATES OF AMERICA,
3
                        Plaintiff,            Docket No.:
4                                             09 CR 663(S-1)
            versus
5                                             U.S. Courthouse
     NAJIBULLAH ZAZI,                         225 Cadman Plaza East
6                                             Brooklyn, NY 11201
                        Defendant.
7    ------------------------------------x
                                              February 22, 2010
8                                             2:30 p.m.

9        Transcript of Criminal Cause for Pleading

10   Before:   HONORABLE RAYMOND J. DEARIE,
                              District Court Chief Judge
11

12                        APPEARANCES

13   For the Government:        BENTON J. CAMPBELL, ESQ.
                                United States Attorney
14                              Eastern District of New York
                                271 Cadman Plaza East
15                              Brooklyn, New York 11201
                                BY:  JEFFREY KNOX, ESQ.,
16                                   DAVID BITKOWER, ESQ.,
                                     Assistant U.S. Attorneys
17
     For the Defendant:         WILLIAM J. STAMPUR, ESQ.
18
     Court Reporter:            LISA SCHMID, CCR, RMR
19                              Official Court Reporter
                                225 Cadman Plaza East
20                              Brooklyn, New York 11201
                                Phone:  718-613-2644
21
     Proceedings recorded by mechanical stenography.  Transcript
22   produced by computer-aided transcription.

23

24

25

                        LISA SCHMID, CCR, RMR
                        OFFICIAL COURT REPORTER

1          THE COURT:  All right.  Good afternoon, everyone.

2     Please be seated.

3          THE CLERK:  May we have the defendant out?

4          We are on this afternoon for a pleading.  This is USA

5     versus Zazi, Docket Number CR 09 663 S-1.  Can I ask the

6     attorneys, please, to note their appearance, beginning with

7     counsel for the government?

8          MR. KNOX:  Jeff Knox, David Bitkower for the

9     government.  Good afternoon, Your Honor.

10          THE COURT:  Hello.

11          MR. STAMPUR:  William J. Stampur for Mr. Zazi.  Good

12     afternoon, Judge.

13          THE COURT:  Mr. Stampur, good afternoon.

14          Mr. Zazi, good afternoon.

15          THE DEFENDANT:  Good afternoon.

16          THE COURT:  Are we ready to proceed?

17          MR. STAMPUR:  We are, Judge.

18          MR. KNOX:  Yes, Your Honor.

19          THE COURT:  Mr. Stampur, I take it the application is

20     to withdraw the previously-entered plea?

21          MR. STAMPUR:  That is correct, Your Honor.

22          THE COURT:  Swear the defendant, please.

23          THE CLERK:  Mr. Zazi, please raise your right hand.

24          (Defendant sworn.)

25          THE DEFENDANT:  Truth.

```
 1              THE COURT:  Thank you.
 2              Mr. Zazi, I have to ask you a number of questions, as
 3    I am sure Mr. Stampur has told you.  If there is anything I say
 4    to you that isn't entirely clear, do not hesitate to say so.
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  It is critical that you understand
 7    everything being said here in the courtroom.  And if there is
 8    any reason that you're not entirely sure, let me know that, and
 9    we will do our best to rephrase or clarify any questions.  Do
10    you understand that?
11              THE DEFENDANT:  Yes, Your Honor.
12              THE COURT:  Along that same line, if you wish at any
13    time to confer with Mr. Stampur, simply ask me, and I'll give
14    you whatever time you need to speak privately with him.
15              THE DEFENDANT:  Yes, Your Honor.
16              THE COURT:  We're in no hurry here, so you take your
17    time, and be comfortable that you understand exactly what's
18    transpiring.
19              You also should also bear in mind that you're now
20    under oath.  That means that your answers to my questions must
21    be truthful.  If they were not in any material way, you could
22    subject yourself to further criminal charges for the offense of
23    perjury, which is lying while under oath.  Do you understand
24    that?
25              THE DEFENDANT:  Yes, Your Honor.
```

```
 1              THE COURT:  Mr. Zazi, first of all, have you had
 2    sufficient time to consider your decision to offer these pleas
 3    of guilty?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  And are you satisfied with Mr. Stampur's
 6    representation?
 7              THE DEFENDANT:  That's correct.
 8              THE COURT:  Please state your full name for the
 9    record.
10              THE DEFENDANT:  Najibullah Zazi.
11              THE COURT:  And how old are you, sir?
12              THE DEFENDANT:  Twenty-five, sir.
13              THE COURT:  And what schooling or formal education
14    have you had?
15              THE DEFENDANT:  From Flushing High School, Queens, New
16    York.
17              MR. STAMPUR:  He did not graduate, Your Honor, but he
18    went to high school.
19              THE COURT:  And you read and write in English, I
20    assume?
21              THE DEFENDANT:  Yes.
22              THE COURT:  Are you presently or have you recently
23    been under the care of a physician or any medical professional?
24              THE DEFENDANT:  No, Your Honor.
25              THE COURT:  Or psychiatric professional?
```

1            THE DEFENDANT:  No, Your Honor.

2            THE COURT:  In the past 24 hours, have you had any

3    drugs, alcohol or anything of that sort?

4            THE DEFENDANT:  No.

5            THE COURT:  Are you taking medication at this time?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  How is your health?

8            THE DEFENDANT:  Good enough.

9            THE COURT:  All right.  You're comfortable?  You can

10   understand what I'm saying to you now?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Have you at any time had difficulty with

13   drugs or alcohol?

14           THE DEFENDANT:  I never took it.

15           THE COURT:  Mr. Stampur, in your discussions with your

16   client, are you satisfied that he understands the rights that

17   he is waiving by waiving indictment, and by pleading guilty?

18           MR. STAMPUR:  Yes, Your Honor.

19           THE COURT:  Is he, in your judgment, competent to

20   proceed and capable of understanding the nature of these

21   proceedings?

22           MR. STAMPUR:  Yes, sir Your Honor.

23           THE COURT:  And again, Mr. Zazi, you are pleased and

24   satisfied with Mr. Stampur's representation?

25           THE DEFENDANT:  That's correct, Your Honor.

1          THE COURT:  Now, sir, the first order of business is

2     what's commonly referred to as a waiver of indictment.  The

3     Information that the U. S. Attorney seeks to file as a formal

4     charging instrument, charges three separate offenses, each of

5     which carries a potential sentence well in excess of one year.

6     Those charges are, by definition, felonies.

7          The Constitution of the United States provides that no

8     person shall be charged with any felony, except by indictment

9     presented by a grand jury.  You have the right, therefore, sir,

10    to refer this matter and these charges to a grand jury for

11    their consideration as to whether or not formal charges should

12    be presented.  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  You could waive that right, as appears to

15    be your intention.  Before you do that, I should tell you a

16    little bit more about the grand jury, and I fully appreciate

17    that the grand jury has already in this case heard evidence,

18    and returned formal charges.

19         A grand jury, sir, is a group of people drawn from our

20    community.  The responsibility of the grand jury is not to

21    determine whether a defendant is guilty or not guilty, but only

22    whether or not there is probable cause to believe that an

23    offense has been committed.

24         A grand jury is comprised of a total of 23 jurors.

25    There must be 16 present to constitute a quorum for the conduct

1    of business of the grand jury, and 12 of those jurors must

2    agree that probable cause has been established before that

3    body, the grand jury, is empowered to charge you or anyone with

4    a felony.

5              That means that if presented with the evidence in this

6    case, the grand jury may or may not indict you on these

7    specific charges.  If they were to decline to do so, the United

8    States Attorney would be powerless to charge you with these

9    offenses specifically, although they would have the opportunity

10   to re-present the matter to the grand jury or to present the

11   matter to another grand jury.  Do you understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Now, if you waive your right to proceed

14   before the grand jury, we would then proceed just as if the

15   grand jury had indicted you on these three specific offenses.

16   Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Is the subject matter of the waiver of the

19   grand jury one of the subjects you have discussed with

20   Mr. Stampur?

21             THE DEFENDANT:  Yes, I did.

22             THE COURT:  Are you fully confident, sir, that you

23   understand your rights before the grand jury?

24             THE DEFENDANT:  That's right.

25             THE COURT:  Do you have any questions that you would

1    like to put to me about any aspect of that?

2            THE DEFENDANT:  At this point?  No, sir.

3            THE COURT:  And Mr. Stampur, you have, of course, just

4    to confirm for the record, fully discussed this aspect of the

5    plea with your client?

6            MR. STAMPUR:  I have, Your Honor.

7            THE COURT:  All right.  The Court finds here that the

8    defendant has, here in open court, in the presence and with the

9    advice of counsel, knowingly and voluntarily waived his right

10   to proceed before the grand jury.

11           I note before me a signed Waiver of Indictment form.

12   I will add my signature to indicate my findings as the

13   presiding judicial officer, and tender it to the clerk of the

14   court.

15           Ellie? (Handing.)

16           THE CLERK:  (Retrieves document.) Thank you.

17           THE COURT:  As I said a moment ago, Mr. Zazi, we now

18   proceed just as if the grand jury had indicted you on these

19   specific charges, the substance of which I will get to in just

20   a moment.

21           Okay.  Now, by that, I mean you have an absolute

22   right, notwithstanding whatever discussions you have had with

23   the government and with counsel, you have an absolute right as

24   you stand there to plead not guilty to these charges.  Do you

25   understand that?

1          THE DEFENDANT:  Yes, Your Honor.  I do.

2          THE COURT:  I'm sorry?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  If you were to plead not guilty, under our

5    Constitution and laws, you would be entitled to a speedy and

6    public trial by jury with the assistance of counsel on the

7    charges reflected in the superseding information, as well as

8    presumably the charges in the underlying indictment.  Do you

9    understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  At trial, you would be presumed innocent

12   of all charges, and I would instruct the jury to that effect in

13   no uncertain terms.  You understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  The government would have the burden of

16   attempting to prove -- to convince the jury of your guilt by

17   competent evidence, and beyond a reasonable doubt.  You would

18   have no burden whatsoever.  You could sit back, say nothing, do

19   nothing.  Simply put, the government to the burden of

20   attempting to convince the jury of your guilt, as I said,

21   beyond a reasonable doubt.  Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  That means, of course, that if the

24   government would were to fail for any reason, technical or

25   otherwise, the jury would be required to, under my

1    instructions, find you not guilty, even if you committed these

2    offenses.  Do you understand that?

3                 THE DEFENDANT:  Yes, Your Honor.

4                 THE COURT:  Now, in the course of the trial, witnesses

5    for the government would be required to come here to court and

6    testify under oath in your presence, in the presence of your

7    attorney.  You would have a right, therefore, to confront each

8    of these witnesses face-to-face, here in the courtroom.

9                 You would have the right, through counsel, to

10   cross-examine each of the government's witnesses, and when

11   appropriate, to object to evidence offered by the government.

12   You would have the right to offer evidence in your own defense.

13   And in that regard, you have a right to compel the attendance

14   of witnesses, and the production of possible evidence, through

15   the use of court order or subpoena.  Do you understand that?

16                THE DEFENDANT:  Yes.

17                THE COURT:  Mr. Zazi, at trial, you would have an

18   absolute right to testify in your own defense, if you chose to

19   do so.  You also enjoy an absolute constitutional right to

20   remain silent and not testify.  And if you decided to do that,

21   in consultation with counsel, and if counsel requested it of

22   me, I would instruct the jury in the strongest possible terms

23   that they would not be permitted in any way to hold your

24   decision against you.  Do you understand that?

25                THE DEFENDANT:  Yes.

 1                THE COURT:  Now, Mr. Zazi, the decision whether or not

 2     to plead guilty -- whether or not to testify at trial, just

 3     like the decision whether or not to plead guilty is a personal

 4     decision that you make, not counsel.  Do you understand that?

 5                THE DEFENDANT:  Yes, Your Honor.

 6                THE COURT:  Obviously, these are critical decisions

 7     that you make with the assistance and guidance of counsel, but

 8     ultimately, they are your decisions to make.  Do you understand

 9     that?

10                THE DEFENDANT:  Yes, Your Honor.

11                THE COURT:  Okay.  Now, having said all of that, if

12     you plead guilty and I accept your pleas, you'll be giving up

13     your constitutional right to a trial and these other rights

14     I've just explained.  Do you understand that?

15                THE DEFENDANT:  Yes, Your Honor.

16                THE COURT:  And you will give them up for all time.

17     You understand that?

18                THE DEFENDANT:  Yes, Your Honor.

19                THE COURT:  There will be no trial.  With the possible

20     exception of sentence, which I'll explain in a few minutes,

21     there is no right to an appeal.  I will simply enter a judgment

22     of guilty, based upon your pleas of guilty.  Do you understand

23     that?

24                THE DEFENDANT:  Yes, Your Honor.

25                THE COURT:  And finally, before I can actually accept

1    your pleas, I am required, under the Federal Rules of Criminal

2    Procedure, to satisfy myself that you are, in fact, guilty of

3    these three charges.  To do that, in just a couple of minutes,

4    I will ask you in turn about each of the charges.  In

5    responding to my questions, obviously, you'll give up your

6    right to remain silent.  You'll give up your constitutional

7    right not to incriminate yourself.  And you'll be called upon

8    here, in open court, to acknowledge your guilt.  Do you

9    understand that?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  Are you willing, then, to give up your

12   right to a trial and these other rights I have just explained?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Do you have any questions before we

15   proceed?

16              THE DEFENDANT:  No, Your Honor.

17              THE COURT:  All right.  I turn my attention to a

18   document that bears the caption of this case.  It's been marked

19   as Court Exhibit 1.  It constitutes the agreement of the

20   parties.

21              Do you have a copy in front of you, Mr. Stampur?

22              MR. STAMPUR:  I do, judge.

23              THE COURT:  Mr. Zazi, if I may direct your attention

24   to it.

25              For the record, it is a ten-page typewritten document

1   containing 13 numbered paragraphs, the final page bearing a

2   number of signatures, including, presumably, Mr. Zazi's and his

3   counsel, along with the United States Attorneys in the case.

4          Mr. Zazi, have you read this document?

5          THE DEFENDANT:  Yes, I did.

6          THE COURT:  Have you read it carefully?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  Do you appreciate, sir, that this document

9   is a very important document in your life and for your future?

10  Is that fair to say?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Have you read it with that degree of care?

13         THE DEFENDANT:  Yes, I did.

14         THE COURT:  Have you had sufficient time to review it

15  with counsel?

16         THE DEFENDANT:  Yes, I had.

17         THE COURT:  Do you feel confident that you understand

18  everything reflected in this agreement?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Has counsel answered any questions that

21  you might have had?

22         THE DEFENDANT:  Yes, he did.

23         THE COURT:  Do you have any questions you would like

24  to put to me?

25         THE DEFENDANT:  No, Your Honor.

```
 1            THE COURT:  Mr. Zazi, finally, does this agreement
 2   fully and accurately set out the full extent of your agreement
 3   with the United States Attorney?
 4            THE DEFENDANT:  Yes.
 5            THE COURT:  Counsel, can you confirm that?
 6            MR. KNOX:  Yes, Your Honor.
 7            MR. STAMPUR:  And I confirm it, Judge.
 8            THE COURT:  All right.  We'll come back to that in
 9   just a moment.  I should note for the record that there's an
10   application pending before me, which I will address
11   momentarily, to seal the contents of the agreement.
12            The charges are reflected, as I say, in a superseding
13   information.  And they are as follows, and there are three.
14            Count 1, conspiracy to use weapons of mass
15   destruction, quote, In or about and between September 2008 and
16   September 2009, both dates being approximate and inclusive,
17   within the Eastern District of New York and elsewhere, the
18   defendant, Najibullah Zazi, also known as Salahuddin, together
19   with others, did knowingly and intentionally and without lawful
20   authority conspire to use one or more weapons of mass
21   destruction, to wit:  Explosive bombs and other similar
22   explosive devices against persons and property within the
23   United States, and in furtherance of the offense, facilities of
24   interstate and foreign commerce, to wit:  Email and the
25   internet were used.  One or more perpetrators, to wit:  The
```

1    defendant, Najibullah Zazi, and others traveled in interstate

2    and foreign commerce, and the offense and the results of the

3    offense would have affected interstate and foreign commerce.

4            Count 2, conspiracy to commit murder in a foreign

5    country:  "In or about and between January 2008 and September

6    2008, both dates being approximate and inclusive, within the

7    Eastern District of New York and elsewhere, within the

8    jurisdiction of the United States, the defendant, Najibullah

9    Zazi, also known as Salahuddin, together with others, did

10   knowingly and intentionally conspire to commit one or more acts

11   outside of the United States that would constitute the offense

12   of murder, if committed in the special maritime and territorial

13   jurisdiction of the United States, and one or more of the

14   coconspirators -- of the conspirators did commit and act within

15   the jurisdiction of the United States to affect an object of

16   the conspiracy.  In furtherance of the conspiracy and to affect

17   its objectives, the defendant, Najibullah Zazi, together with

18   others, knowingly committed and caused to be committed, among

19   others, the following overt act:  On or about August 28, 2008,

20   the defendant, Najibullah Zazi, together with others, boarded a

21   flight at Newark Liberty International Airport, to fly from

22   Newark, New Jersey to Doha, Qatar and Peshawar, Pakistan."

23           Count 3, providing material support for a foreign

24   terrorist organization:  "In or between and September 2008 and

25   September 2009, both dates being approximate and inclusive,

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

1    within the Eastern District of New York and elsewhere, the

2    defendant, Najibullah Zazi, also known as Salahuddin, together

3    with others, did knowingly and intentionally provide material

4    support and resources as defined in 18 USC, Section 2339(a)Sub

5    B, including currency, training, communications, equipment and

6    personnel to a foreign terrorist organization to wit, al-Qaeda,

7    which has been designated by the Secretary of State as a

8    foreign terrorist organization since 1999, pursuant to Section

9    219 of the Immigration and Nationality Act, end quote.

10            Mr. Zazi, have you read, have you reviewed these

11   charges?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Have you reviewed them carefully?

14            THE DEFENDANT:  Yes, I did.

15            THE COURT:  Do you feel confident that you understand

16   what it is that you've been charged with in each of these three

17   counts?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you have any questions you would like

20   to put to the Court about any of the charges reflected --

21            THE DEFENDANT:  No, Your Honor.

22            THE COURT:  -- in the counts?  All right.

23            Let me turn now briefly to the subject of sentencing.

24   The agreement before the Court reflects, among other things,

25   the statutory penalties that you face upon conviction for each

1    of these three counts, and I will review that with you now.  I

2    assume you have reviewed this information in great detail with

3    counsel?

4         THE DEFENDANT:  Yes.

5         THE COURT:  With respect to Count 1, you face a period

6    of a maximum term of imprisonment of life, and that is life

7    without parole.  There is no parole in the federal system.  Do

8    you understand that?

9         THE DEFENDANT:  Yes, Your Honor.

10        THE COURT:  You face a period of up to life,

11   supervised -- lifetime supervised release.

12        Supervised release is a period of supervision that

13   begins to run the moment you are released, if and when you are

14   released from federal custody.

15        If you were to violate the terms or conditions of your

16   supervised release at any time during the period of

17   supervision, then under the terms of my sentence in this case,

18   you could be returned to prison for up to five years without

19   any credit being given to you for the time you spent at liberty

20   under supervision.  Do you understand that?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  The statute also provides for a fine up to

23   an amount of $250,000.  The Court will impose a special

24   assessment of $100.  And you should know it is virtually

25   inevitable as a result of your conviction on any one of these

1    three charges, you will, if upon -- if and when released, be

2    removed from the United States.  Do you understand that?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Count 2 contains, as far as I can

5    determine, virtually identical statutory penalties.

6                MR. KNOX:  Yes, Your Honor.

7                THE COURT:  You should understand that these penalties

8    may be imposed consecutively -- again, a maximum of life,

9    lifetime supervised release, a fine of up to $250,000, a $100

10   special assessment.

11               Count 3 carries a maximum term of 15 years

12   imprisonment.  Again, a maximum term of life, lifetime

13   supervised release.

14               A violation under this count would or could result in

15   a return to prison for up to two years, again, without credit

16   being given to you for the time you spend at liberty under

17   supervision.  Again, a fine of up to $250,000, and a special

18   assessment of $100.

19               All right.  Those are the statutory penalties that the

20   Congress of the United States has written into the laws that

21   you are charged with violating.

22               The second aspect of the sentencing involves what we

23   call the sentencing guidelines.

24               I would like to ask the U. S. Attorney to give us some

25   indication as to their current thinking on the likely

1  calculation of the sentencing guidelines under each of the

2  three counts.

3       MR. KNOX:  Yes, Your Honor.

4       With respect to the Count 1, conspiracy to use weapons

5  of mass destruction, we estimate a base offense level of 42,

6  plus a 12-level increase under the terrorism enhancement, under

7  3(a)1.4, for a total offense level of 54, and under the

8  terrorism enhancement, the criminal history category is

9  automatically set at six, which results in a guideline range of

10  life.

11       For Count 2, the conspiracy to murder in a foreign

12  country, the base offense level we calculate as 33, plus a 12-

13  level terrorism enhancement, which results in a level 45, minus

14  three points for acceptance of responsibility, results in 42,

15  again, a criminal history category of six, which results in a

16  sentence of 360 months to life.

17       And for Count 3, the conspiracy to provide material

18  support to al-Qaeda, the base offense level is 26, plus a

19  two-level enhancement for the use of explosives, plus a

20  12-level enhancement under the terrorism enhancement, 3(a)1.4,

21  which results in a total offense level of 40, minus three

22  levels for a timely acceptance of responsibility, and couple

23  that with a criminal history category of six, results in a

24  guideline range of 360 months to life, although that would be

25  capped by the 15-year statutory maximum for that count.

1          THE COURT:  Mr. Zazi, I take it, listening to the

2     United States Attorney, this information doesn't come as a

3     surprise to you?

4          THE DEFENDANT:  No.

5          THE COURT:  You have discussed this with counsel?

6          THE DEFENDANT:  Yes, I did, sir.

7          THE COURT:  Now, I can tell you today -- I cannot tell

8     you today whether or not I agree with what the United States

9     Attorney has just said.  I simply do not have the information

10    necessary to calculate the guidelines sentencing range.  Okay?

11         I won't be in a position to do that until after I have

12    received the pre-sentence report prepared by the probation

13    department with your input, and counsel's input and guidance,

14    as well as that of the United States Attorney.

15         The report will tell an objective story of this case

16    and your involvement it in.  It will provide your own personal

17    history.  It will also reflect the Probation Department's

18    recommended calculation of the guidelines sentencing range.

19         You and counsel will see that report before I do.

20    You'll be given an opportunity to voice objections or make

21    other comments to the Probation Department, in an attempt to

22    influence their final report, which will ultimately come to me.

23    At that point, with the assistance of counsel and with their

24    input, I will calculate the advisory guidelines range.

25         THE DEFENDANT:  Thank you, Your Honor.

1          THE COURT:  I am not obligated to sentence you within

2    that range.  I am, however, obligated to consider as an

3    important first step in this sentencing procedure, the advisory

4    guidelines range.  Thereafter, what the law requires of me is

5    that I consider not only the range, but certain statutory

6    factors that are peculiar to you as an individual, and to the

7    offense conduct itself, as well as any other pertinent

8    information that counsel on both sides of the aisle might bring

9    to my attention in an effort to influence my judgment as to

10   what is a reasonable sentence.

11         The law requires that I impose what the law recognizes

12   to be as a reasonable sentence.  If, at the end of the day, you

13   think I've imposed an unreasonable sentence, you may seek to

14   have my sentence reviewed by a higher court, and the fees and

15   expenses associated with such an appeal would be paid by the

16   court under the terms of the Criminal Justice Act.  Do you

17   understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  The United States Attorney enjoys a

20   comparable right.  If, following sentence, they feel that my

21   sentence has been unreasonable and on the lenient side, they,

22   too, may seek review.  Should they do that, your interest in

23   that proceeding would be represented by counsel, paid for by

24   the court, under the terms of the Criminal Justice Act. Do you

25   understand that?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  If at the time of sentence, you disagree

3   with my calculation of the advisory guidelines range, you will

4   not be permitted on that basis alone to withdraw your pleas of

5   guilty.  Do you understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Do you have any questions before we

8   proceed?

9              THE DEFENDANT:  No.

10             THE COURT:  Either of me or of counsel?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  Are you ready to plead?

13             THE DEFENDANT:  Yes, Your Honor.

14             MR. STAMPUR:  Your Honor, may I interject, so the

15  Court is aware, that myself and Mr. Zazi prepared a statement

16  that he's prepared to read to the Court, and I believe contains

17  all the elements of the three counts within the superseding

18  information.

19             THE COURT:  I will expect nothing less, but before we

20  get there, let me just touch all the bases here.

21             Mr. Zazi, what is your plea to Count 1, guilty or not

22  guilty?

23             THE DEFENDANT:  Guilty, Your Honor.

24             THE COURT:  What is your plea to Count 2, guilty or

25  not guilty?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  I'm sorry?

3          THE DEFENDANT:  Yes, Your Honor, guilty. (Raises

4     hand.)

5          THE COURT:  What is your plea to Count 3, guilty or

6     not guilty?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  Are you pleading guilty voluntarily?

9          THE DEFENDANT:  Yes.

10         THE COURT:  You have considered the case, the

11    circumstances, the advice of counsel, and made your own

12    decision that this is the best course of action available to

13    you at this time?  Is that a fair statement?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Has anyone threatened you in any way to

16    plead guilty?

17         THE DEFENDANT:  No.

18         THE COURT:  Has anybody forced you?

19         THE DEFENDANT:  No.

20         THE COURT:  Has anybody made any promises as to what I

21    might do when it comes to sentence?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  All right.  Turning then back to the

24    specific charges.  Count 1 charges -- Count 1 and Count 2 -- if

25    you'll permit me, Counts 1 and 2 of the superseding information

1    charge the crime of conspiracy.  All right?

2         What, sir, is your understanding of the nature of the

3    conspiracy?  What is a conspiracy?

4         THE DEFENDANT:  Two or more planned to do criminal or

5    any kind of activity.

6         THE COURT:  That's right.  A conspiracy is an illegal

7    agreement, and therefore, it requires that at least two people,

8    two or more people conspire or agree to commit a specific

9    offense.

10        The specific offense that is the object of the

11   conspiracy in Count 1 is to use weapons of mass destruction,

12   more specifically, explosive bombs and other similar explosive

13   devices, against persons and property here in the United

14   States, and in furtherance of that, to use the facilities of

15   interstate commerce by virtue of the email or Internet,

16   traveling in interstate or foreign commerce, and with the

17   understanding or the knowledge that the offense and the results

18   would have some effect on interstate or foreign commerce.  Did

19   you do that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Count 2 alleges a conspiracy to commit

22   murder in a foreign country.  Were you involved in such an

23   illegal agreement?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  And finally, Count 3 alleges the

```
 1    substantive count for providing material support to a terrorist

 2    organization, namely al-Qaeda.  Did do you that?

 3              THE DEFENDANT:  Yes, Your Honor.

 4              THE COURT:  Tell me what happened.

 5              MR. STAMPUR:   Judge, if I may, Counts 1 and 3 are

 6    intertwined, so I think, with the Court's permission, Mr. Zazi

 7    will read Count 2 first, and then Counts 1 and 3 will both be

 8    covered by his allocution.

 9              THE COURT:  That's fine.  With respect to Count 2,

10    which charges conspiracy to commit murder in a foreign country.

11              THE DEFENDANT:  Your Honor, during the spring and

12    summer of 2008, I conspired with others to travel to

13    Afghanistan to join the Taliban and fight against the U. S.

14    military and its allies.  We made this agreement in Queens, New

15    York, to carry out this agreement.

16              At the end of August 2008, we flew from New York

17    airport to Peshawar, Pakistan.

18              THE COURT:  Your purpose in going to Pakistan?

19              THE DEFENDANT:  Was to join Taliban.

20              THE COURT:  For the purpose of?

21              THE DEFENDANT:  To fight alongside with the Taliban

22    against the U. S.

23              THE COURT:  With respect to Counts 1 and 3?

24              THE DEFENDANT:  Yes, Your Honor.  Although, our plan

25    was to go to Afghanistan and fight with the Taliban.  While we
```

1    were in Peshawar, we were recruited by al-Qaeda, instead.  We

2    were taken by al-Qaeda to training camp in Waziristan, where we

3    received weapons training.

4         During the training, al-Qaeda leaders asked us to

5    return to the United States and conduct martyrdom operation.

6    We agreed to this plan.  I did so because of my feelings about

7    what the United States was doing in Afghanistan.

8         Later, I received more training from al-Qaeda about

9    how to construct the explosives for attack in the United States

10   or to carry martyrdom operation.  I took notes on the training

11   and later emailed a summary of the notes to myself, so that I

12   could access them in the U. S.

13        During my training, I had discussion with al-Qaeda.  I

14   had discussions with al-Qaeda leaders, including target

15   locations, such as New York City subways.  I also give money

16   and computers to al-Qaeda during that trip.

17        In January 2009, I come back to United States.

18   Beginning around June 2009, I accessed my bomb-making notes and

19   began researching where to find the ingredients for the

20   explosives.

21        I also took trips to New York, and meet with others to

22   discuss the plan, including the timing of the attack, and where

23   to make the explosives.

24        I then used the bomb-making notes to construct

25   explosive for the detonators in Denver.  The explosives was

1    Acetone Peroxide.

2            In early September 2009, I drove to New York with the

3    detonator explosive and other materials necessarily --

4    necessary to build a bombs.

5            I arrived in New York City on Thursday, September

6    10th.  And we intend to obtain and assemble the remaining

7    components to build a bomb over the weekend.

8            The plan was to conduct martyrdom operation on subway

9    lines in Manhattan as soon as the material were ready, Monday,

10   Tuesday or Wednesday.

11           When I arrived in New York City, I realized that law

12   enforcement was investigating me.  At that point, we threw away

13   the detonator explosives and other materials, and I flew back

14   to Denver, and I was arrested just a few days after.

15           THE COURT:  You used the word "bomb."  Do you mean

16   bomb or bombs?

17           THE DEFENDANT:  Bombs.

18           THE COURT:  Plural?

19           THE DEFENDANT:  Plural.

20           THE COURT:  And you say you met in New York with

21   others.  Are they al-Qaeda representatives?

22           THE DEFENDANT:  No.

23           THE COURT:  But others who are involved in this

24   activity?

25           THE DEFENDANT:  Yeah.

1          THE COURT:  And you used the phrase "martyrdom

2     activities."  Is that in the nature of a suicide bomber?

3          THE DEFENDANT:  Yes, Your Honor.  I have a different

4     explanation to that.  To me, it meant that I would sacrifice

5     myself to bring attention to what the United States military

6     was doing to civilian in Afghanistan by sacrificing my soul for

7     the sake of saving other souls.

8          THE COURT:  And did your plan include specific targets

9     within the subway system?

10          THE DEFENDANT:  Wasn't sure, but yes.

11          THE COURT:  Anything else?

12          MR. KNOX:  No, Your Honor.  We believe that's

13     sufficient on all of the charges.

14          THE COURT:  Any questions you would like to put to me

15     before we conclude the proceedings?

16          THE DEFENDANT:  Thank you.  No, Your Honor.

17          THE COURT:  Based on the information that has been

18     given to me, I find that the defendant fully understands his

19     rights, the consequences and possible consequences of his

20     pleas, and that there is on the record of this proceeding a

21     factual bases for these pleas.  I therefore accept the pleas of

22     guilty to Counts 1, 2 and 3 of superseding information, bearing

23     Docket Number 09 CR 663, S-1.

24          I urge to you to cooperate, Mr. Zazi, with the

25     Probation Department, consistent, of course, with the advice of

1    counsel, in their preparation of the pre-sentence report.

2            I would ask the U. S. Attorney to maintain custody of

3    the original agreement.  I have, as I noted earlier, received a

4    sealed application, to seal the contents of the agreement

5    between the parties.  Obviously, I've heard from no third

6    parties on that.  But on the basis of what I've heard and

7    without prejudice to the application of any third parties, I

8    grant the application, pending any further application, and

9    direct the sealing of the agreement between the parties.

10           Is there anything further?

11           MR. KNOX:  Your Honor, we have a sentencing date

12   scheduled for June 25th, at 11 a. m.

13           THE COURT:  Okay.  Got that?  And that is your date?

14           THE CLERK:  Yes.  Yes, indeed.

15           THE COURT:  Anything else, Mr. Stampur?

16           MR. STAMPUR:  No Your Honor.

17           THE COURT:  Mr. Zazi, anything you would like to ask

18   me before we conclude?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  Gentlemen?

21           MR. KNOX:  Thank you, Judge.

22           MR. BITKOWER:  Thank you, Your Honor.

23           THE CLERK:  Mr. Stampur, I'm going to note for the

24   Probation Department that you wish to be present at the time

25   your client is interviewed.

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

1          MR. STAMPUR:  I would like to be present.

2          THE CLERK:  Yes.

3          (Proceedings concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25